**Not for Publication**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
:
LAWRENCE OLIVER PHILSON            :
                                   :
         Petitioner                :     Civil Action No. 11-01884 (JAP)
                                   :
     v.                            :     **OPINION**
                                   :
                                   :
SUPERINTENDENT, NEW JERSEY         :
STATE PRISON                       :
                                   :
         Defendant                 :
                                   :
_____:

PISANO, District Judge:

      This matter is before the Court pursuant to a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 filed by petitioner Lawrence Philson.  Petitioner challenges his 2002 conviction in New Jersey Superior Court, alleging ineffective assistance of counsel, insufficiency of the evidence, prosecutorial misconduct, and the imposition of a sentence in violation of the due process and equal protection clauses of the Fourteenth Amendment.  On April 18, 2012, Petitioner filed a Motion to Stay.  For the reasons set forth below, the Motion to Stay will be denied, and the Court will proceed to decide the Petition.  The Court finds that Philson's Petition is both untimely and without merit, and will therefore be denied.

    **I.   Procedural Background**

      Petitioner Lawrence Philson was charged in multiple counts in Essex County Indictment No. 2000-1-228, for offenses committed on September 28, 1999.  Following a jury trial, Petitioner was convicted of second-degree conspiracy to commit robbery and kidnapping, N.J.S.A. 2C:15-1, 2C:13-1b(1) (count one); first-degree kidnapping, N.J.S.A. 2C:13-1b(1)

1

(count three); first-degree carjacking, N.J.S.A. 2C:15-2 (count four); first-degree armed robbery, N.J.S.A. 2C:15-1 (count five); third-degree terroristic threats, N.J.S.A. 2C:12-3a (count seven); first-degree armed robbery, N.J.S.A. 2C:15-1 (count eight); third-degree aggravated assault of a police officer, N.J.S.A. 2C:12-1b(5)(a) (count fifteen); second degree aggravated assault, N.J.S.A. 2C:12-1b(1) (count sixteen); second-degree eluding, N.J.S.A. 2C:29-2b (count seventeen); third-degree possession of controlled dangerous substance, N.J.S.A. 2C:35-10a(1) (count eighteen); third-degree possession of a controlled dangerous substance with the intent to distribute, N.J.S.A. 2C:35-5b(3) (count nineteen); third-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5b (count twenty); second-degree possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4a (counts twenty-one and twenty-two); third-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5b (count twenty-six); and fourth-degree possession of defaced firearm, N.J.S.A. 2C:39-3d (county twenty-seven).  On May 28, 2002, Philson was sentenced to sixty years, with a fifty-one year parole disqualifier.

On November 10, 2004, the State of New Jersey Appellate Division affirmed the conviction.  The court rejected Philson's claim that his sentence was excessive compared to that of his co-defendant, Clinton Martin, without prejudice to Philson's right to raise the issue in the context of a post conviction relief ("PCR") petition.  On February 2, 2005, the New Jersey Supreme Court denied certification on direct appeal.  On May 18, 2007, Philson filed a PCR petition alleging prosecutorial misconduct and an unfair disparity in sentencing, which was denied by order dated May 1, 2008.  On August 5, 2009, the Appellate Division affirmed the order denying the PCR petition.  On November 20, 2009, The New Jersey Supreme Court denied the petition for certification.  Philson filed this Habeas Petition on April 4, 2011.

## II. Factual Background

Pursuant to 28 U.S.C. § 2254(e)(1), the Court will defer to the factual determinations of the state court as set forth in the Appellate Division Opinion on Nov. 10, 2004. The Petitioner has the "burden of rebutting the presumption of correctness by clear and convincing evidence." Id. Petitioner does not challenge these facts. They are reproduced below:

> Rajul Thomas was a drug dealer. When he arrived home in the evening of September 28, 1999, two men with guns confronted him. The men were later identified as defendant and his co-defendant, Clinton Martin. One man struck him in the head with the gun and removed his jewelry: a chain, a ring and a bracelet. The intruders took Thomas into the living room where they demanded money.
>
> Thomas told the men where to find between $7000 and $8000 he kept in his closet. After they took it, they wanted more. They tied Thomas up, and told him to call someone to get more money. Thomas called two people, his friend "Ricky," and his sister, Shearon Hollaway.
>
> With the men still in his house, Thomas's fiancée, Teisha Evans, returned home with their children. While pointing a gun at her, defendant grabbed Evans by her throat, took her chain, and threw her to the floor. One of the intruders told her to "shut the F up" and tell where the money was. After informing the men that it was in the closet, the intruder told her they already knew where that money was, but they wanted the rest. Evans told the intruder to call Thomas's sister. After Evans begged defendant and Martin not to kill her and her children, she was taken into the living room with the children; they were placed on their stomachs, and covered with coats and clothing. Evans remained on the floor until the police arrived.
>
> Meanwhile, defendant and Martin continued to demand money from Thomas, striking him with the gun. They threatened him with his, Evans's and the children's death unless he came up with more money.
>
> The first person that Thomas called, "Ricky," arrived. He approached the house, but did not enter, and left without bringing money. Thomas's brother-in-law, Joseph Hollaway, arrived with $7500. At the behest of the intruders, he placed the money in a black bag and passed it though the door. Then Hollaway left. Still not satisfied, the intruders directed Thomas to call his sister and tell her they were going to her house to get more money.
>
> The men then forcibly took Thomas from his house; he was made to lie down in the back seat of a black Lexus. They drove to Thomas's sister's house.

3

When the men arrived, Hollaway went outside; he saw the black Lexus. At about that time, East Orange Police Officer Felix Torres drove by in a marked police cruiser. As he did, defendant, who had been driving the Lexus, changed places with Martin, who had been in the back of the car. As another police car approached, Martin, now driving, "gunned" the car, driving in reverse to get away, causing Torres to swerve to avoid it. As Martin drove, Thomas rolled out of the car.

Torres, with his siren and take-down lights activated, followed Martin. During the subsequent car chase, defendant, sitting in the back seat of the Lexus, leaned out the window and, holding the gun with two hands, fired at Torres.

. . .

On cross examination, when asked what he was doing in response to being shot at, Torres replied: "I . . . looked, [and when shots were] fire[d], dipped." He duck[ed] and . . . [took] evasive maneuvers." Torres testified the chase lasted less than a minute and the cars were traveling about fifty miles per hour. He said defendant's head popped out four or five times. When asked by defense counsel if he knew who the driver was, Torres replied that he did not, but, he said: "All I know is that the person that shot at me is this individual right here," referring to defendant.

When the Lexus struck a fence and came to a stop, the two men ran from the car. Torres, having radioed a description of the men and the direction of their flight, remained by the car, while other officers searched the area.

Martin was found in possession of a .380 caliber automatic handgun, several decks of heroin, and $2626 in cash. Another police officer found defendant, hiding in the bushes. Defendant had his right hand under his body and when he rolled over, the officer found a plastic bag containing 14,886 in cash, jewelry that had been taken from Evans and Thomas earlier that evening, and glassine packages containing cocaine and heroin. Several feet from where defendant was located, the officer found a .9 mm automatic handgun, as well as rounds and magazines, all wrapped in a t-shirt. The serial number on the handgun had been filed off. The next morning, a .45 caliber automatic handgun with a live round in the magazine was found in a nearby driveway, with spent shell casings nearby.

Several days after the crimes, neither Thomas nor Evans was able to identify either of the two intruders out of photo arrays. The only person to identify defendant was Torres.

Defendant, who was tried without Martin, testified at trial. He admitted he was present in Thomas's Lexus, but he denied he participated in the crimes. He said Martin, a former "associate" of his from a 1997 incarceration, told him he was going to see a friend about some money and defendant, with nothing else to do, went along for the ride. He testified Martin gave him a .45 caliber automatic

4

> handgun to hold for him, but he denied entering Thomas's apartment or firing the weapon during the police chase. According to defendant, Thomas was not "stressed" when he came out of his home with Martin, but defendant could not "comment" on whether Thomas was forced at gunpoint to lay down in the car.
>
> Defendant testified that "two guys" approached the Lexus and fired shots, causing Martin to drive off. According to defendant, while the police were in pursuit, he ducked down and threw the gun he had been holding over the front seat to Martin. When the car stopped, at Martin's request he grabbed a black bag when he ran from the car. He knew the bag contained money, but he did not know it contained drugs or jewelry.

New Jersey v. Philson, Crim. No. A-6501-01T4, *5-12 (N.J. App. Div. Nov. 10, 2004).

### III. The Motion to Stay

Although represented by counsel in his initial Habeas Petition, Philson filed this Motion to Stay pro se. In it, he alleges that he should be given time to pursue a remedy in state court because he discovered "during the appellate process" that the State did not intend to call his co-defendant as a witness at trial. Petitioner has not suggested how this might have prejudiced him, nor has he attempted to justify waiting until 2012 to seek relief. The state "appellate process" ended in 2009, when the New Jersey Supreme Court denied certification of the denial of Petitioner's application for Post-Conviction Relief ("PCR"). Thus, the Petitioner has missed his opportunity to raise any issues discovered at that time either through the state PCR process or under the AEDPA. N.J. Court Rule 3:22-12(a)(2); 28 U.S.C. 2244(d)(2). Therefore, Petitioner's Motion to Stay will be denied, and the Court will proceed to the underlying Petition.

### IV. Timeliness

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a one-year statute of limitations applies to an application for a writ of habeas corpus when a state-court judgment becomes final. 28 U.S.C. § 2241(d). A state court's judgment becomes final upon conclusion of

5

direct review, including the ninety-day period for filing a petition for a writ of certiorari in the United States Supreme Court.  Schwartz v. Meyers, 204 F.3rd 417, 419 (3d Cir. 2000).  The New Jersey Supreme Court denied Philson's petition for certification on February 2, 2005, and the judgment became final on May 3, 2005.  Thus, Petitioner had until May 2, 2006 to file a PCR petition or a federal petition.  He did not file a PCR petition until May 7, 2007, over one year beyond the statute of limitations.  Petitioner admits that his application was late under 28 U.S.C. § 2241(d).  Pet'r's Br. 18.  However, he argues that he is entitled to equitable tolling because his counsel "gave him inaccurate advice about the deadline for filing a federal petition."  Pet'r's Br. 19.

Equitable tolling is granted if (1) the petitioner has diligently pursued his rights, and (2) an "extraordinary circumstance" prevented timely filing.  Holland v. Florida, 130 S.Ct. 2549, 2562 (2010).  The "extraordinary circumstance" prong requires gross attorney misconduct such as abandonment or blatant misrepresentation.  Holland, 130 S.Ct. at 2565.  See Seitzinger v. Reading Hosp. and Med. Ctr., 165 F.3d 236, 237 (3d Cir. 1999) (equitable tolling applied where "a diligent client persistently questioned the lawyer as to whether he had filed the complaint in time, and he affirmatively misrepresented to her that he had.").  This stands in contrast to what the court in Holland referred to as "garden variety" negligence.  Holland, 130 S.Ct. at 2564.  The Supreme Court has held that "counsel's mistake in miscalculating the limitations period" does not constitute an "extraordinary circumstance."  Lawrence v. Florida, 549 U.S. 327 (2007).  Here, the Petitioner argues that counsel "gave him inaccurate advice about the deadline."  Pet'r's Br. 19.  As the Supreme Court made clear in Lawrence, this is not a sufficient excuse for late filing and therefore Petitioner is not entitled to equitable tolling.  Nevertheless, the Court will evaluate the substance of Philson's Petition.

6

V. <u>Standard of Review</u>

A federal court only has jurisdiction to hear a habeas petition that challenges a state conviction or sentence in violation of clearly established federal law.  28 U.S.C. § 2254(a).  Thus, the prisoner must allege some deprivation of a federal right to qualify for review.  <u>Engle v. Isaac</u>, 456 U.S. 107, 120 n. 19 (1982).  In addition, the AEDPA requires the writ of habeas corpus to be denied unless the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

AEDPA deference applies to claims that were "adjudicated on the merits in State Court proceedings."  28 U.S.C. § 2254(d).  This refers to claims that were determined on substantive, rather than procedural grounds.  <u>Rompilla v. Horn</u>, 355 F3d 233, 247 (3d Cir. 2004).  No discussion is required by state courts in rejecting a presented claim on the merits, and "where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."  <u>Harrington v. Richter</u>, 131 S.Ct. 770, 784 (2011).  "If the state court rejects the claim on procedural grounds, the claim is barred in federal court unless one of the exceptions to the doctrine of <u>Wainwright v. Sykes</u>, 433 U.S. 72, 82–84 (1977), applies."  <u>Id.</u> at 787.

VI. <u>Analysis</u>

Even if the Court were to allow equitable tolling in this case, Petitioner's claims fail on the merits.  Philson raises four grounds for relief in his habeas petition:  (1) the conviction was obtained and the sentence imposed in violation of the right to effective assistance of counsel; (2)

the evidence was insufficient to prove conspiracy or accomplice liability beyond a reasonable doubt; (3) the prosecutor committed misconduct by arguing during summation facts not in evidence; and (4) The sentence was imposed in violation of the due process and equal protection clauses of the Fourteenth Amendment.

A.  Right to Effective Counsel

Philson asserts that he was denied effective assistance of counsel because his attorney did not move to suppress Officer Torres's out-of-court identification, and never interviewed a particular witness.  To establish an ineffective assistance of counsel claim, a defendant must show (1) that counsel's performance was deficient and (2) that there was "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland v. Washington, 466 U.S. 668 (1984).  Strickland requires courts to determine counsel's performance based on an objective standard of reasonableness.  Strickland, 466 U.S. at 687.  The burden is on the petitioner to prove counsel constitutionally ineffective because there is a strong presumption of attorney competency.  Id.

The failure to file a motion to suppress Officer Torres's identification did not constitute ineffective assistance of counsel.  The issue of impermissibly suggestive identification arises when an in-court identification is the fruit of a pretrial lineup or photo array.  United States v. Wade, 388 US 218, 219 (1967).  While eyewitness identification may be potentially unreliable, the Court has held that "the fallibility of eyewitness evidence does not, without the taint of improper state conduct, warrant a due process rule requiring a trial court to screen the evidence for reliability before allowing the jury to assess its creditworthiness."  Perry v. New Hampshire, 132 S.Ct. 716, 719 (2012).  Here, Officer Torres's identification occurred while in pursuit of the suspects, not as a result of a lineup or photo array, and thus the likelihood of improper state

8

action was minimal.  Petitioner's attorney was reasonable in his decision not to file a motion to suppress, because the motion would likely have been denied.

      Petitioner's claim that his counsel's decision not to interview a particular witness constituted ineffective assistance of counsel also lacks merit.  The Supreme Court has held that the complete failure to conduct any pretrial investigation may constitute ineffective assistance.  Strickland, 466 U.S. at 691.  However, counsel's decision not to interview this witness was not a "complete failure to investigate" as Petitioner asserts.  In United States v. Gray, 878 F.2d 702, 710 (3d Cir. 1989), defense counsel had the names of multiple witnesses who observed the crime, but made no effort to contact them.  The Third Circuit held that counsel was ineffective because the failure to investigate was "not based on tactical decisions but merely upon lack of diligence."  Gray, 878 F.2d at 712.  Unlike the attorney in Gray, who made no effort to contact multiple witnesses who observed the crime, the attorney in this case interviewed most of the eyewitnesses, but did not interview the eight-year old daughter of one of the victims, "A.E."  A.E. testified on direct that she saw the two men who robbed the Thomas residence.  It is unclear based on the record whether the decision not to interview or cross-examine this witness was a tactical decision by the attorney.  However, the failure to interview one eight-year-old witness is not the type of utter failure to conduct an investigation contemplated by Strickland.  Because of the strong presumption of attorney competency, the Court does not find counsel's performance deficient.  Even if counsel's performance were deficient, Petitioner's claim still fails under Strickland's second prong.  No evidence has been offered to suggest that, had this witness been interviewed in advance, she would have testified that Petitioner was not one of the men in the house at the time of the robbery.  Therefore, Petitioner has not demonstrated any "reasonable probability" that the outcome of the trial would have been different.

B.  Absence of Adequate Evidence to Prove Conspiracy

Petitioner asserts that the evidence was insufficient to prove conspiracy beyond a reasonable doubt.   The Supreme Court recently held that a "twice-deferential standard" applies to sufficiency of the evidence challenges.  Parker v. Matthews, 567 U. S. 574 (2012).  First, the jury's conclusions drawn from the evidence must be deferred to if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."   Id. at 73 (citing Jackson v. Virginia, 443 U. S. 307, 319 (1979)).  Second, the state court's decision must be "objectively unreasonable" to be overturned.  Id. at 74 (citing Cavazos v. Smith, 132 S.Ct. 2, 4 (2011)).  A heavy burden is placed on Petitioner to show that no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307 (1979).

Petitioner claims that his conviction resulted from the "impermissible inference from the recent possession of stolen property that [he] was involved in the theft/robbery."  Pet'r's Br. 31.  However, Petitioner's apprehension in possession of the stolen property was not the only evidence supporting conspiracy.  New Jersey v. Philson, Crim. No. A-6501-01T4, *16 (N.J. App. Div. Nov. 10, 2004).  The jury also relied on the testimony of Evans, Thomas and Torres.  Id. While Evans was not able to identify the two men who broke into Thomas's house, Thomas claimed that the two intruders were the same men who drove off in the Lexus.  Torres then identified Petitioner as one of the men in the Lexus during the shooting.  Id. From these facts, it was reasonable for the jury to infer that Petitioner was one of the intruders and that he acted in concert with Martin in committing the charged offenses.  See U.S. v. Kapp, 781 F.2d 1008, 1010 (3d Cir. 1986) (conspiracy may be proved entirely through circumstantial evidence as long as

10

reasonable inferences are drawn from related facts and circumstances); United States v. Ellis, 595 F.3d 154, 160 (3d Cir. 1979) (same).

C.  Prosecutorial Misconduct

Petitioner's claim of prosecutorial misconduct is unfounded.  Petitioner asserts that the prosecutor argued facts not in evidence during his closing statement.  This issue was raised during petitioner's PCR hearing and the judge correctly denied it.  According to "clearly established federal law," a prosecutor's statements only violate the Constitution if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Parker, 567 U.S. at 576 (citing Darden v. Wainwright, 477 U.S. 168 (1968) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).

Courts do not consider a prosecutor's objectionable comments in isolation, but will view them in light of the whole proceeding and against the weight of the evidence supporting the conviction.  United States v. Zehrbach, 47 F.3d 1252 (3d Cir. 1995).  Prosecutorial misconduct may occur when the government misstates material facts or introduces facts not in evidence. Marshall v. Hendricks, 307 F.3d 36, 65 (3d Cir. 2002).  In Marshall, the prosecutor mischaracterized the testimony of one of the witnesses and personally vouched for a witness's credibility.  Id.  The court deemed this conduct improper, but found that it was insignificant enough to not have the "capacity to affect the jury's deliberative process."  Therefore, the court held that the prosecutor's statements did not amount to a Constitutional violation.

Petitioner claims that the prosecutor improperly argued that Philson alone fired a gun at Officer Torres.  However, the record does not support this statement.  There is no evidence that the prosecution stated that Philson was the sole shooter.  Unlike in Marshall, where the prosecutor mischaracterized the testimony of a witness, in this case the prosecutor accurately

11

represented the testimony of Officer Torres in his closing argument, and based his theory of the case on this testimony. Therefore, Petitioner's claim of prosecutorial misconduct is denied.

D. Excessive Sentencing

Finally, Petitioner contends that the disparity in sentencing between him and his co-defendant violated the due process clause of the Fourteenth Amendment. Philson was sentenced to sixty years while his co-defendant, Martin, was only sentenced to twelve years. The Supreme Court has held that gross disparity in sentencing alone is not sufficient to invoke due process or equal protection. Dorszynski v. United States, 418 U.S. 424 (1974). The disparity must be the result of discrimination based on race, sex, or similar ground. Yick Wo v. Hopkins, 118 U.S. 356 (1886). Here, no evidence of impermissible discrimination in the sentencing of Mr. Philson is evident from the record. Petitioner was convicted of 16 criminal offenses compared to Martin's 6 convictions. As the judge at the PCR hearing indicated, "there are numerous counts in which this defendant was found guilty by the jury, committing heinous acts that the defendant Martin did not plead guilty to, was not found guilty of, was not convicted of, and was not sentenced for." PCR Hr'g Tr. 38:12-16, April 25, 2008 [docket entry no. 21 Ex. 3]. Therefore, Petitioner's sentence was not imposed in violation of the Fourteenth Amendment.

**VII. Conclusion**

The Court next must determine whether a certificate of appealability should issue. See Third Circuit Local Appellate Rule 22.2. The Court may issue a certificate of appealability only if the Petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims." Miller–El v.

Cockrell, 537 U.S. 322, 327 (2003). Here, Petitioner failed to make a showing of the denial of a constitutional right, and the Court believes jurists of reason would not disagree with this conclusion.

For the foregoing reasons, the Court dismisses the Petition as untimely and without merit and denies a certificate of appealability.

  /s/ Joel A. Pisano      
JOEL A. PISANO
United States District Judge

Dated: August 3, 2012